UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>SOUTHBRIDGE ASSOCIATES, LLC<br><br>Debtor | Chapter 11<br>Case No. 26-41208-EDK |

**DEBTORS' EMERGENCY VERIFIED MOTION FOR ORDER AUTHORIZING USE OF CASH AND NON-CASH COLLATERAL AND FOR ADEQUATE PROTECTION**
**[Emergency Determination Requested]**

Debtor Southbridge Associates LLC (the "Debtor") hereby moves this Court for entry of an order, pursuant to Sections 361 and 363(c)(2) of the Bankruptcy Code, and MLBR 4001-2, authorizing the use of the cash collateral of creditor X-Caliber Rural Capital, LLC. **As set forth below, the Debtor will immediately need to pay certain ongoing expenses on a daily basis. Accordingly, the Debtor requests, pursuant to MLBR 9013-1(g), emergency determination of this Motion.** In support of this Motion, the Debtor states:

## I. Introduction

1. On October 6, 2026, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its businesses and financial affairs as a debtor-in-possession.

## II. Background

3. The Debtor is the owner of real estate located at 14 Mechanic Street, Southbridge, Massachusetts known as the Southbridge Innovation Center which upon which it operates the

Wellsworth Hotel (the "Hotel" ) (formerly the Southbridge Hotel & Conference Center) and a commercial office building (the "Office Building", with the Hotel, the "Property"). The Debtor is a Delaware Limited Liability Company registered to do business in the Commonwealth of Massachusetts.

4. Ownership and control of the hotel was recently acquired by a group of entities ultimately controlled by Barry R. Lundgren, through a court-authorized bankruptcy sale in *In re Norton,* Bankruptcy Case No. 25-11271 (JEB). The Debtor has three members: (1) Franklin Advisors Southbridge, LLC, a Massachusetts limited liability company ("FAS"), which holds owns 75 percent interest and is the Manager of the Debtor; (2) Southbridge Hotel Investors, LLC, which holds a 6.25 percent interest; and (3) Southbridge Conference Investors, LLC, which owns an 18.75 percent interest.

5. The Hotel is an upscale, full-service independent hotel with approximately 203 rooms. In addition, the Hotel offers extensive conference and banquet facilities and Visions Restaurant, Shades Lounge, Focus Fitness Center, an indoor swimming pool, indoor basketball court, two racquetball courts, business facilities and a landscaped courtyard. The Hotel is a full-service property.

6. The Office Building is comprised of 72,399 square feet of which approximately 13,657 square feet is revenue generating leased office space with approximately 27,280 square feet planned for lease to a state agency, and approximately 31,462 square feet of additional space available for future leasing or build-out.

7. The Hotel is managed by a third-party management company, Shaner Hotel

Holdings Limited Partnership[1] ("Shaner"). Shaner is the exclusive operator and manager of the Hotel, such that all hotel personnel are employed by Shaner and not the Debtor.

## III. <u>The Debtor's Creditors</u>

8. In or about November 2022, prior to the acquisition of the Membership interest of the Debtor by FAS, the Debtor borrowed the sum of approximately $13.25 million from X-Caliber Rural Capital, LLC ("X-Caliber"). As collateral for the loan, the Debtor granted X-Caliber a first priority mortgage on the Property, and a senior lien on substantially all of the Debtor's assets, as reflected in a UCC-1 financing statement filed with the State of Delaware on November 15, 2022. The funds, upon information provided, were used principally to refinance hotel debt. Since FAS's purchase of the Debtor was an acquisition of membership equity interests, it did not discharge the Debtor's underlying obligations to X-Caliber and the other creditors.

9. In addition to X-Calber, two entities, represented by V State Filings and Corporation Service Company, have filed UCC-1 financing statements against the Debtor with the Commonwealth of Massachusetts. The Debtor is currently unaware of who is represented by these filers, and whether the debt is still due.

10. SALLC's unsecured indebtedness to its trade creditors, incurred in the ordinary course of business operations, totals approximately $1,560.000.

11. The Debtor filed this Chapter 11 proceeding to stop a foreclosure of the Property by X-Caliber scheduled on October 7, to ensure its ongoing operation and the restructuring of its obligations and to preserve the value of its assets. The Debtor seeks to address its financial obligations, and evaluate restructuring and disposition alternatives for the benefit of its estate and

---

[1] Shaner holds a 3% equity interest in the Debtor.

creditors.

12. The Debtor believes that by reducing and restructuring its secured debt and by increased marketing of the Hotel operations and the leasing of vacant space in the Office Building, it will be able to operate with a positive cash flow and make a reasonable distribution to unsecured creditors.

13. The Debtor's unsecured indebtedness to its trade creditors, incurred in the ordinary course of business operations, totals approximately $1,560.000.

## IV. Relief Requested

14. Section 363(c)(2) of the Code provides that, absent consent by the secured party, "The trustee (here, the debtor in possession) may not use, sell or lease cash collateral under paragraph (1) of this subsection unless: (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Section 363(e) of the Code requires that the court condition the use of cash collateral as is necessary to provide adequate protection to the secured creditor.

15. Section 361 of the Code provides that adequate protection may be provided by (1) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under Section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." *11 U.S.C. §§ 361(1), (2), (3).*

16. What constitutes adequate protection is determined on a case-by-case basis. *See*

*MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The purpose is to protect a secured creditor from diminution in value of its interest in the collateral during the period of use by the Debtors. *See In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

17. The Debtor proposes to use the cash generated to maintain operations and to generate revenue. The Debtor proposes to grant the following as additional adequate protection:

a. The Debtor shall grant to X- Caliber, State Filings and Corporation Service Company (collectively, the "Secured Creditors"), a continuing replacement lien and security interest to the same validity, extent and priority that each would have had in the absence of the bankruptcy filing; and

b. The Debtor shall remain within its Budget, attached hereto as Exhibit A, within an overall margin of 10 percent.

c. The Debtor's Hotel is a seasonal business such that the greatest portion of its revenue is generated between March and September. Cash is accumulated during the peak season which enables the Hotel to sustain operating losses during the slower periods. To the extent necessary, the Debtor's majority owner and Manager has committed to providing a non-priming debtor in possession ("DIP") loan to insure continued operations during this off-season.

The foregoing proposal more than adequately protects the Secured Creditors.

**V. Notice**

18. No trustee, examiner, or official committee has been appointed in this Chapter 11 case.

19. Copies of this Emergency Motion, together with a proposed Order hereon, have been furnished by ECF, email, fax transmission or overnight mail to: (a) the Office of the United States Trustee for this district; (b) the Secured Creditors; (c) the Debtor's unsecured creditors; (d) the Internal Revenue Service; (e) the Massachusetts Department of Revenue; and (f); any party having filed Notice of Appearance (collectively the "Notice Parties"). The Debtor submits that such service constitutes sufficient notice of this Motion, the proposed Order hereon and the relief sought hereunder in the particular circumstances.

**VI. Conclusion**

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter an order, in a form to be provided to the Court, authorizing the Debtor to use cash collateral in accordance with the Budget; and (b) grant such other and further relief as this Court may deem just and proper.

Respectfully submitted this 8th day of October 2026.

/s/ David B. Madoff
David B. Madoff (BBO#552968)
Steffani M. Pelton (BBO#666470)
Nina M. Parker (BBO#389990)
MADOFF & KHOURY LLP
124 Washington Street
Foxboro, MA 02035
508-543-0040
madoff@mandkllp.com

## Verification

Barry Lundgren, as representative of the Manager of the Debtor, hereby verifies that he has read the foregoing Verified Motion and that the factual allegations contained therein are true and accurate based on his personal knowledge.

Signed under the penalties of perjury this 8th day of October, 2026.

*/s/ Barry Lundgren*
Barry Lundgren